Filed 12/12/25  P. v. Sheppard CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MELISSA ANN SHEPPARD,<br><br>    Defendant and Appellant. | F088355<br><br>(Super. Ct. No. SC027664A)<br><br>**OPINION** |

<u>**THE COURT**</u>*

APPEAL from a judgment of the Superior Court of Kern County.  David E. Wolf, Judge.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Kari Mueller and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Franson, Acting P. J., Snauffer, J. and De Santos, J.

**INTRODUCTION**

In 1985, a jury convicted defendant Melissa Ann Sheppard of first degree murder (Pen. Code,[1] § 187), with the special circumstances the murder was committed during the commission or attempted commission of a robbery and burglary (§ 190.2, former subd. (a)(17)(i), (a)(17)(vii)), and involved the infliction of torture (§ 190.2, subd. (a)(18)). (*People v. Sheppard* (Dec. 4, 1987, F006780 [nonpub. opn.] (*Sheppard I*).) Defendant was sentenced to a term of life without the possibility of parole.

In 2024, defendant filed a request for recall and resentencing pursuant to Assembly Bill No. 600 (2023-2024 Reg. Sess.) (Assem. Bill No. 600) and section 1172.1. The trial court summarily denied the request for relief.

On appeal, defendant contends her "case must be remanded for resentencing because the trial court erred in denying her ... section 1172.1 petition in violation of due process of law." (Boldface and capitalization omitted.)

For the reasons stated below, we dismiss the appeal for lack of jurisdiction.[2]

**FACTUAL AND PROCEDURAL BACKGROUND**[3]

In *Sheppard II*, we previously summarized the facts as follows from our prior opinion in *Sheppard I*:

> "On June 4, 1984, Rebecca F.[[4]] was the residential property manager of an apartment building where [defendant] was staying with friends. That morning, while in Rebecca's apartment, [defendant] saw

---

[1]    All further references are to the Penal Code, unless otherwise indicated.

[2]    Defendant also has a pending appeal in case No. F089016. On May 6, 2025, she made a motion to consolidate her two appeals into one appeal. However, on May 15, 2025, this court denied her request for consolidation.

[3]    On December 16, 2024, this court, at the request of defendant, took judicial notice of this court's prior opinion in *People v. Sheppard* (Feb. 4, 2022, F081553 [nonpub. opn.]) (*Sheppard II*).

[4]    Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

2.

Rebecca transfer several hundred dollars in cash to the apartment owner. [Defendant] expressed to several other tenants that she intended to rob and kill Rebecca. Later that day, [defendant] went to Rebecca's apartment and entered under pretext of applying for an apartment. There, [defendant] stabbed Rebecca in the side, dragged her into the bathroom, and threw her on the floor. [Defendant] asked where the money was and Rebecca told her the money was in the desk. [Defendant] stabbed Rebecca a few more times, paused to get the money from the desk, and then returned to stab her again. [Defendant] paused again, found a purse in which she placed the money, then returned to stab Rebecca some more. [Defendant] then locked Rebecca in the apartment and left. [Defendant] later told other tenants that she killed Rebecca. Rebecca was stabbed 55 times and died from loss of blood from multiple wounds to the heart, lungs, liver, and a kidney. At trial, [defendant] testified she entered Rebecca's apartment with her boyfriend with the intent to commit a robbery, and her boyfriend killed Rebecca while [defendant] ransacked the apartment. (*Sheppard [I]*, *supra*, F006780.)

"On September 10, 1985, the Kern County District Attorney filed a second amended information charging [defendant] with first degree murder (§ 187), with the special circumstances the murder was committed during the commission of a robbery (§ 190.2, former subd. (a)(17)(i)) and burglary (§ 190.2, former subd. (a)(17)(vii)), and involved the infliction of torture (§ 190.2, subd. (a)(18)). The People further alleged [defendant] personally used a deadly weapon, to wit, a knife, in the commission of the offense (§ 12022, former subd. (b)). (*Sheppard [I]*, *supra*, F006780.)

"On November 5, 1985, a jury convicted [defendant] of murder and found the enhancement and all special circumstance allegations true. On December 16, 1985, the court struck the enhancement for use of a knife and sentenced [defendant] to life without the possibility of parole. On appeal, this court affirmed. (*Sheppard [I]*, *supra*, F006780.)" (*Sheppard II*, *supra*, F081553.)

On May 22, 2024, defendant filed a request for recall and resentencing pursuant to section 1172.1. Specifically, she listed the following reasons to justify her resentencing:

"On December 18th 1985, at twenty(20) years old, I arrived at California Institution for Women (CIW). I am now housed at Central California Women's Facility (CCWF). On November 9th, 2023, I was diagnosed with Breast Cancer. Since my diagnosis I have had a bilateral mastectomy and am currently undergoing chemotherapy. At sixty-one (61) I have been incarcerated for more than half my adult life with over forty

3.

(40) years served at CIW & CCWF. During my incarceration I have been diagnosed with stage 4 liver disease, kidney disease, thyroid disease, diabetes mellitus, degenerative bone disease from the hip down, and have a 3 vertebrae fusion.

"I was nineteen (19) years old when I committed my life crime in 1984. I was young without any guidance, correction or concept of what it was to be a good person. My addiction and anger continued after my incarceration. I continued to make poor choices because I was in pain, emotionally, physically and mentally it was a notion I could not accept, 'being hurt.' I believed I needed to be strong and that meant not admitting to any pain.

"Today, I witness the younger generation entering the facility and I see myself forty (40) years ago, 'A know it all' needing to prove just how tough I am. Today, I know what strength is; it is the ability to know when I am wrong and admit it. It is to ask for help when I know I am too weak. It is learning and passing on the knowledge in hopes the same mistakes are not made. It isn't fighting when I'm angry or numbing my emotions with drugs, and it isn't hanging out with the people who tell you what you want to hear. My strength now comes from meeting my fears and weaknesses head on.

"I have been able to concentrate on my sobriety, first, through the three (3) month Substance Abuse Program (SAP) in tandem with the Medically Assisted Treatment (MAT) program and second, my one on one sessions with a Peer Support Specialist. My medical care team includes an assigned palliative care nurse, whom I turn to when I feel overwhelmed by the cancer treatments or simply when my body feels different. When my immune system is not compromised the Comfort Care Volunteers are constantly checking in with me. Talking to them permits me to manage the many losses I have experienced and the understanding that I caused some of these losses. This has promoted further insight and accountability into my past wrongs and the many effects of my crime.

"I am medically unassigned (no work) and am focusing on my treatment and healing. I am healing not just from the cancer but from the many wounds and hurts I have incurred throughout the years, some of them I caused. One of the ways I am healing is walking through the steps after a Breast Cancer diagnosis, with the many women who are now being diagnosed in the facility. In some ways it is a new sisterhood of women healing in an unforgiving environment. On the days I am too tired I attempt to help my community by watering and caretaking the indoor plants. On really good days, I venture outside and water the front yard of the unit.

4.

"My life experiences have led me to where I am today. It took me a long time to want more for myself and even longer to learn how to be a better person. It was through the programs the facility offered that I was able to begin healing, to begin to be better for myself, my family and my community. SAP, Palliative Care, MAT program, and the people I choose to be around today are all factors that continue to help me. When I was young I lacked many things. I am now considered elderly and now have so much. I have a support system in here and out in the free world as well. My children, grandchildren, and great grandchildren love me and communicate with me weekly. When I have enough energy, I now have the knowledge and ability to crochet blankets and stuffed animals for my grandchildren and my great grandchild." (Underscoring omitted.)

On May 31, 2024, the trial court denied the request finding defendant ineligible for relief.

## DISCUSSION

I.      SECTION 1172.1 RESENTENCING

Defendant contends her "case must be remanded for resentencing because the trial court erred in denying her ... section 1172.1 petition in violation of due process of law." (Capitalization and boldface omitted.) Specifically, she argues that "because [her] conviction, specifically the true findings on the special circumstances, occurred before the enactment of ... section 1385.1, she is, in fact eligible for section 1172.1 resentencing consideration [and] [h]ad the court below exercised discretion to strike the special circumstance findings, [she] would potentially be eligible for parole consideration, including youthful offender consideration under section 3051." As we discuss, defendant has no statutory right to appeal a trial court's denial to recall or resentence pursuant to section 1172.1. Therefore, we do not address her contentions in this appeal.

*A.      Applicable Law*

Where, as here, execution of sentence has commenced and the judgment is final, the trial court is generally "deprived of jurisdiction to resentence" a criminal defendant. (*People v. Karaman* (1992) 4 Cal.4th 335, 344, citing *Dix v. Superior Court* (1991) 53 Cal.3d 442, 455; accord, *People v. Hernandez* (2019) 34 Cal.App.5th 323, 326.) "A lack

of jurisdiction in its fundamental or strict sense results in ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " (*People v. Lara* (2010) 48 Cal.4th 216, 224.) " '[F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent. Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio*." (*Id*. at p. 225.)

To obtain resentencing on a final judgment, a defendant must file a petition for writ of habeas corpus (see *People v. Picklesimer* (2010) 48 Cal.4th 330, 339), or through an authorized special statutory procedure (e.g., §§ 1170.18, 1170.91, 1172.1, 1172.2, 1172.6, 1172.7, 1172.75). (*People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1118.) Section 1172.1 (former § 1170, subd. (d)) provides an exception to the general rule that a trial court loses jurisdiction once execution of sentence has begun by authorizing a recall and resentencing procedure that may be invoked when, for example, the Secretary of the CDCR recommends resentencing. (§ 1172.1, subd. (a)(1); *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082.)

Assembly Bill 600 amended section 1172.1 to allow a court to now resentence a defendant "on its own motion" when "applicable sentencing laws at the time of the original sentencing are subsequently changed by new statutory authority or case law[.]" (§ 1172.1, subd. (a)(1), as amended by Stats. 2023, ch. 446, § 2.) Accordingly, effective January 1, 2024, section 1172.1, subdivision (a)(1) provides the court may, "on its own motion, ... at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law, ... recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).)

Notably, section 1172.1, subdivision (c) expressly states, "A defendant is not entitled to file a petition seeking relief from the court under this section." (§ 1172.1,

subd. (c).)  Additionally, "[i]f a defendant requests consideration for relief under this section, the court is not required to respond." (*Ibid.*)

*B.     Analysis*

" ' "It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute." [Citations.]' " (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 598.)  Section 1237, subdivision (b) "provides that a defendant may appeal from 'any order made after judgment, affecting the substantial rights of the party.' " (*Teal v. Superior Court*, at p. 598.)

Here, section 1172.1 does not address whether a trial court's denial of a defendant's request for recall and resentencing under this section is appealable. However, section 1172.1, subdivision (c) expressly provides that the trial court has no duty to respond to a defendant's request that it initiate recall and resentencing proceedings on its own motion.  Thus, it necessarily follows that defendant has no "right" to such relief under the plain language of the statute, and an order denying such relief cannot be said to affect defendant's substantial rights.  Accordingly, defendant has no right to appeal from the trial court's order and the appeal must be dismissed for lack of jurisdiction.

Given our conclusion that defendant's appeal must be dismissed for lack of jurisdiction, we deem it unnecessary to consider her other contentions.

**DISPOSITION**

The appeal is dismissed.